**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ARAVIND R. TARUGU and DR. RAJU C. REDDY, | ) | |
| | ) | 2:19-cv-01256-RJC |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Judge Robert J. Colville |
| | ) | |
| JOURNAL OF BIOLOGICAL CHEMISTRY and AMERICAN SOCIETY OF BIOCHEMISTRY AND MOLECULAR BIOLOGY, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

Robert J. Colville, United States District Judge

Before the Court is the Partial Motion to Dismiss Pursuant to Rule 12(b)(6) (ECF No. 23) filed by Defendants Journal of Biological Chemistry ("JBC") and American Society of Biochemistry and Molecular Biology ("ASBMB") (collectively, "Defendants"). Plaintiffs Aravind R. Tarugu and Dr. Raju C. Reddy (collectively, "Plaintiffs") filed a Brief in Opposition (ECF No. 26) to Defendants' Motion on December 30, 2019. Defendants filed a Reply (ECF No. 29) on January 6, 2020. This matter is now ripe for disposition.

I.      **Background**

A detailed recitation of the allegations set forth in Plaintiffs' operative First Amended Complaint ("Complaint") (ECF No. 19) is not necessary in addressing Defendants' Partial Motion to Dismiss,[1] as the only issue presented by Defendants' Motion is whether Plaintiffs may seek the

---

[1] Though the Court notes that it has thoroughly reviewed Plaintiffs' Complaint in its entirety.

permanent injunctive relief requested in Count I of Plaintiffs' Complaint.  *See* Br. in Supp. 2-3, ECF No. 22.  As such, the Court summarizes the allegations set forth in the Complaint as follows:

Plaintiffs assert claims sounding in defamation against Defendants in this matter.  JBC publishes scientific articles which fall under the scientific fields of chemistry, biochemistry, biophysics, systems biology, RNA biology, immunology, microbiology, neurobiology, epigenetics, and computational biology, among others, and is a wholly owned subsidiary of ASBMB, a society which owns and operates a number of scientific publications and regularly publishes scientific articles by itself and through its subsidiaries, such as the JBC.  Am. Compl. ¶¶ 5-10, ECF No. 19.  Plaintiffs assert that Defendants, in retracting a scientific research article titled "Down-regulated peroxisome proliferator-activated receptor γ (PPARγ) in lung epithelial cells promotes a PPARγ agonist-reversible phenotype in chronic obstructive pulmonary disease (COPD)" ("the Article") co-authored by Plaintiffs and originally published in the Journal of Biological Chemistry on December 24, 2013,[2] published false and defamatory statements about Plaintiffs.  *Id.* at ¶¶ 21-22; 129-135.  Specifically, Plaintiffs assert that Defendants' December 6, 2018 retraction ("the Retraction") of the Article contained false and defamatory statements which asserted that Plaintiffs had falsified data and reused certain images in writing the Article.  *Id.* at ¶¶ 143-147.

Count I of Plaintiffs' Complaint asserts a claim for defamation against both JBC and ASBMB, and seeks a permanent injunction "enjoining the Defendants from publicly displaying or further disseminating the Retraction, and requiring Defendants to otherwise withdraw the Retraction from all publicly available sources."  Am. Compl. 27, ECF No. 22.  Counts II and III

---

[2] Plaintiffs are two of seven co-authors of the Article.  Am. Compl. ¶ 22.  The other co-authors are not parties to this action.

of the Complaint assert individual claims for defamation seeking monetary damages against JBC and ASBMB, respectively.

Defendants filed their Partial Motion to Dismiss on December 9, 2019.  At this juncture, Defendants do not challenge Plaintiffs' claims for defamation against each of the Defendants at Counts II and III,[3] but rather assert that Plaintiffs may not, as a matter of law, seek the injunctive relief sought at Count I.  Br. in Supp. 6, ECF No. 22.  Defendants argue that Count I of Plaintiffs' Complaint, which seeks a permanent injunction enjoining Defendants from further displaying or disseminating the allegedly libelous Retraction and requiring Defendants to withdraw the Retraction, fails as a matter of law because "equity will not enjoin a defamation" under Pennsylvania law.  *Id.* at 8.  Defendants further assert that the injunctive relief requested in Count I of the Complaint would constitute compelled speech in violation of Defendants' First Amendment rights.  *Id.*  Defendants argue that, accordingly, Count I of Plaintiffs' Complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## II.     Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A

---

[3] Defendants assert that they reserve the right to challenge these claims at a later stage of the proceedings, upon the development of a more complete record.  Br. in Supp. 2 n.2, ECF No. 22.

"formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

"If a plaintiff requests leave to amend a complaint vulnerable to dismissal before a responsive pleading is filed," a court must permit amendment unless it would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." *Grayson*, 293 F.3d at 108.

## III.   Discussion

Initially, this Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332(c) based upon diversity of citizenship and an amount in controversy which exceeds $75,000.00. *See* Am. Compl. ¶ 19. The parties are seemingly in agreement that the Court should apply Pennsylvania law to Plaintiffs' defamation claims. *See* Br. in Supp. 8, ECF No. 22; Br. in Opp'n 6, ECF No. 26. In *Lucker Mfg., A Unit of Amclyde Engineered Prod., Inc. v. Home Ins. Co.*, 23 F.3d 808 (3d Cir. 1994), the United States Court of Appeals for the Third Circuit cited *Melville v. American Home Assur. Co.*, 584 F.2d 1306, 1311 (3d Cir. 1978) for the proposition that courts should avoid dicta on conflict of law questions where the same has not been put at issue. *Lucker Mfg.*, 23 F.3d at 813. This Court further notes that its research has revealed no conflict between the laws of New York, Maryland, and Pennsylvania with respect to the specific issue presently before the Court.

5

*See Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 239 F.3d 172 (2d Cir. 2001); *Prucha v. Weiss*, 197 A.2d 253 (Md. 1964).  Accordingly, the Court shall apply Pennsylvania law in resolving Defendants' Partial Motion to Dismiss.

As discussed above, Defendants assert that Count I of Plaintiffs' Complaint should be dismissed with prejudice because equity will not enjoin a defamation under Pennsylvania law, and because the permanent injunction requested in Count I would constitute compelled speech in violation of Defendants' First Amendment rights.  Br. in Supp. 8, ECF No. 22.  In response, Plaintiffs argue that it is within this Court's authority and discretion to grant the narrowly tailored injunctive relief sought by Plaintiffs in Count I.  Br. in Opp'n 9, ECF No. 26.  Specifically, Plaintiffs argue that the Supreme Court of Pennsylvania may be inclined to adopt the "Modern Rule," which would permit a court to award narrowly tailored injunctive relief in a defamation action where a final judicial determination has been made as to the defamatory nature of the statement at issue, in a defamation case where a jury makes a final determination that a statement is defamatory.  *Id.* at 6-8.

The Court must first address Plaintiffs' request that the Defendants be enjoined from further dissemination of the Retraction.  The United States Court of Appeals for the Third Circuit addressed a similar situation in *Kramer v. Thompson*, 947 F.2d 666 (3d Cir. 1991), wherein the Third Circuit Court of Appeals reveresed a district court's orders which enjoined a defendant from publishing future libels against a plaintiff and which further required the defendant to retract past libels.  *Kramer v. Thompson*, 947 F.2d 666, 666 (3d Cir. 1991).  In *Kramer*, the defendant, Thompson, had retained the plaintiff, Kramer, as an attorney to bring a securities fraud claim against Thompson's former broker.  *Kramer*, 947 F. 2d at 666.  During the course of Kramer's representation of Thompson, Thompson accused Kramer of dissuading the F.B.I. from

investigating Thompson's securities fraud claim, ultimately resulting in the deterioration of the parties' relationship and Thompson's discharge of Kramer as his counsel.  *Id.* at 667.

Subsequently, Thompson sent "a series of critical and accusatory letters about Kramer to various private attorneys, federal judges, F.B.I. agents, federal and state prosecutors, newspapers, and television stations in the Philadelphia area[,]" sending a total of at least 160 letters to 60 individuals and entities.  *Id*.  The letters alleged  that Kramer: "(1) had 'thrown' Thompson's case; (2) had deliberately destroyed certain documents related to the case; (3) had used drugs and was a member of the highly publicized 'Yuppie Drug Ring' organized by Philadelphia dentist Lawrence Lavin; (4) was connected to organized crime; and (5) had committed arson on his own car."  *Id.* (footnote omitted).  Kramer brought a libel action against Thompson in the Court of Common Pleas of Philadelphia County, and that court eventually entered a default judgment against Thompson.  *Id.*

Thompson ceased his letter writing for approximately two years, but resumed after learning about a different suit filed by Kramer in federal district court against an automotive repair shop. *Kramer*, 947 F. 2d at 667.  Thompson sent a letter resuming his previous accusations against Kramer to the opposing counsel in Kramer's federal district court case, and copied that letter to "the state Disciplinary Board, the federal judge hearing the case, The *Philadelphia Inquirer*, the United States Justice Department, and Kramer."  *Id*.  Kramer subsequently filed a second libel action in the United States District Court for the Eastern District of Pennsylvania.  *Id*.  The district directed a verdict on the issue of liability in that case after finding that Thompson's statements were per se libelous.  *Id.* at 668.  The jury awarded Kramer $100,000 in compensatory and $38,000 in punitive damages, and the district court simultaneously entered a permanent injunction "prohibiting Thompson from making further statements about Kramer of the type adjudged

libelous, and ordering him to write letters of retraction to all persons who had received prior libelous communications." *Id*.

On appeal, the United States Court of Appeals for the Third Circuit specifically considered Thompson's challenges to the permanent injunction enjoining Thompson from "issuing new statements of the type found libelous," and requiring "Thompson to retract or withdraw various previously issued libelous statements and court filings." *Id*. at 669. Thompson argued that the prohibitory injunction and retraction order had the effect of "prohibiting and mandating" free speech in violation of the First Amendment to the United States Constitution and Article I, Section 7 of the Pennsylvania Constitution. *Id*. The Third Circuit explained that its responsibility was to "predict how the Pennsylvania Supreme Court would decide this case under its laws and Constitution," and stated that the issue before it could broadly be stated as: "would the Pennsylvania Supreme Court be willing to permit an exception to the rule that equity will not enjoin a defamation in cases where there already has been a jury determination that the defendant's statements were libelous?" *Kramer*, 947 F.2d at 676. The United States Court of Appeals for the Third Circuit concluded that "the Pennsylvania Constitution does prohibit a judge from enjoining future libelous speech." *Id*. at 670.

In reaching its decision in *Kramer*, the United States Court of Appeals for the Third Circuit considered the Supreme Court of Pennsylvania's decision in *Willing v. Mazzocone*, 393 A.2d 1155 (Pa. 1978). In *Willing*, a former client of a law firm marched between court buildings with a "sandwich-board" sign which read:" LAW FIRM of QUINN MAZZOCONE Stole money from me and Sold-me-out-to-the INSURANCE COMPANY," while ringing a cowbell, blowing a whistle, and pushing a shopping cart on which the former client had placed an American flag. *Willing*, 393 A.2d at 1156. The former client's former attorneys, after attempting to amicably

dissuade the former client from such demonstrations, sued the former client in equity seeking to enjoin the former client from engaging in further demonstrations.  *Id*.  The trial court granted an injunction, which the Superior Court eventually modified.  *Id.* at 1157.  In *Willing*, the Supreme Court of Pennsylvania reversed the holdings of the trial court and the Superior Court, finding that the orders issued by those courts were "clearly prohibited by Article I, Section 7 of the Pennsylvania Constitution and by *Goldman Theatres v. Dana*, 405 Pa. 83, 173 A.2d 59, *cert. denied*, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961)."  *Id*.  The Pennsylvania Supreme Court stood behind the traditional view that "equity lacks the power to enjoin the publication of defamatory matter," and found that the plaintiffs had an adequate remedy at law despite the fact that the defendant was indigent.  *Id.* at 1158; *see also id.* at 1159 (Roberts, J. concurring) ("Money damages are adequate to recompense the plaintiffs for any losses they have suffered as a consequence of the defendant's defamatory publication.  Thus, it was improper to grant equitable relief based on appellant's presumed inability to pay a money judgment.").

While the Third Circuit in *Kramer* examined cases that applied an exception to the rule that equity will not enjoin a defamation, and found the "reasoning and policies undergirding these cases quite persuasive," it ultimately held that "the available evidence leads us to the conclusion that the Pennsylvania Supreme Court would overturn the injunction against prospective libel issued by the district court against Thompson."  *Kramer*, 947 F.2d at 677.  In so holding, the Third Circuit relied on five factors.  First, the Third Circuit noted

> [T]he maxim that equity will not enjoin a libel has enjoyed nearly two centuries of widespread acceptance at common law. . . . In any event, as evidenced by the Pennsylvania Supreme Court's unqualified rejection of the Superior Court's "modern" view in *Willing*, Pennsylvania would appear firmly bound to the traditional rule. . . . Whatever the reason, the fact remains that the Supreme Court of Pennsylvania appears entirely comfortable with the common-law bar; hence, we must tread lightly and carefully before recognizing an exception to this general rule in a diversity case turning on Pennsylvania law.

*Id.* at 677-78.  Second, the Third Circuit noted that "although an exception to the general rule has been recognized in several cases where there has been a jury determination of the libelous nature of specific statements, we would do well not to overstate the degree of acceptance that has been accorded to this exception."  *Id.* at 678.  The Third Circuit further noted that the Supreme Court of Pennsylvania would be more likely to apply the exception to the traditional rule where "there *actually* has been a jury determination regarding the libelous nature of the defendant's statements[,]" as opposed to the situation presented in *Kramer*, where the district court had directed a verdict.[4]  *Id*. at 678-79.  The Third Circuit next explained:

> Fourth, and perhaps most importantly, we believe that the Pennsylvania Supreme Court would not adopt the jury determination exception if confronted with this case because, as *Willing* pointedly suggests, that Court continues to place great emphasis on the adequate remedy doctrine as a bar to equitable relief.  Indeed, even a jury determination that particular statements are libelous does not address the traditional notion that equity should not intervene where legal remedies (i.e., damages) are adequate, either in practice or even just in theory.

*Id.* at 679.  Finally, the Third Circuit noted that *Kramer* presented "a stronger case than *Willing* for denying equitable relief.  Unlike *Willing*, there has been no showing that Thompson is indigent (the record suggests that he is moderately affluent), or that the threat of future damages is inadequate to deter him or to compensate Kramer."  *Id*.

Considering all of the above factors, the United States Court of Appeals for the Third Circuit in *Kramer* reversed the portions of the district court's orders which "enjoined Thompson from repeating the statements deemed libelous and from communicating with anyone doing business with Kramer."  *Id.* at 680.  This Court is bound by Third Circuit and Pennsylvania Supreme Court precedent in resolving Defendants' Motion.  As aptly summarized by the United

---

[4] Though the Third Circuit also noted that "[i]n theory, of course, a directed verdict at law is tantamount to a jury verdict."  *Kramer*, 947 F. 2d at 679.

States District Court for the Eastern District of Pennsylvania, "[t]he Third Circuit in *Kramer* predicted that the Pennsylvania Supreme Court will adhere to the traditional, common law principle that equity will not enjoin a defamation, especially when a party has an adequate remedy at law in the form of money damages." *Graboff v. Am. Ass'n of Orthopaedic Surgeons*, No. 12-5491, 2013 WL 1875819, at *5 (E.D. Pa. May 3, 2013), *aff'd*, 559 F. App'x 191 (3d Cir. 2014) (citing *Kramer*, 947 F.2d at 675).

In the present case, there is no indication that Defendants are unable to satisfy a damages award, or that the threat of future damages is inadequate to deter Defendants from future defamation or insufficient to compensate Plaintiffs. Further, the alleged defamatory conduct set forth in Plaintiffs' Complaint is sufficiently similar to that discussed in *Kramer*, *Willing*, and, in particular, *Graboff*.[5] As such, even if Plaintiffs successfully establish that the Retraction is

---

[5] In *Graboff*, a board-certified orthopedic surgeon brought a second lawsuit against a private organization whose membership is comprised primarily of orthopedic surgeons for publishing an article in a newsletter and on the defendant's website which portrayed the plaintiff in a false light. *Graboff*, 2013 WL 1875819 at *1. The *Graboff* court found that the plaintiff's claims were barred by the doctrine of res judicata, as the plaintiff had already been awarded damages in a previous case based upon the same publication of the article at issue by the same defendant. *Id.* at *3. Plaintiff argued that the defendant republished the defamatory article by failing to remove the article from its website, and sought injunctive relief requiring the defendant to remove the article from its website. *Id.* The United States District Court for the Eastern District of Pennsylvania rejected Plaintiff's argument regarding republication, *see id.* at *5 n.5, and further held:

> Plaintiff received the benefit of a remedy at law when the Jury awarded him $196,000 in damages for the false light claim brought against the [defendant] in the prior action. Thus, under Pennsylvania law, Plaintiff seeks impermissible injunctive relief for a false light claim. Accordingly, this Court cannot Order Defendant to remove the offending article from the [defendant's] website.

*Id.* at *5. The Court notes that while the United States Court of Appeals for the Third Circuit affirmed the district court's decision in *Graboff*, it also noted:

> The District Court also dismissed Graboff's request for an injunction compelling [defendant] to remove the Article from its website because he seeks a remedy not permitted under Pennsylvania law. *See Kramer v. Thompson*, 947 F.2d 666, 678–79 (3d Cir.1991) (holding Pennsylvania Supreme Court precedent "quite clearly reflects its continuing adherence to the adequate [legal] remedy rationale for denying injunctive relief" and stating the Pennsylvania Supreme Court would be unlikely to permit injunctions even following "a jury determination of the libelous nature of specific statements"). Because res judicata justifies dismissal of the complaint, we need not evaluate whether the remedy sought is available.

*Graboff v. Am. Ass'n of Orthopaedic Surgeons*, 559 F. App'x 191, 195 (3d Cir. 2014).

defamatory, under Third Circuit and Pennsylvania Supreme Court precedent Plaintiffs would not be entitled to a permanent injunction prohibiting Defendants from further disseminating the Retraction. Accordingly, Plaintiffs' request for permanent injunctive relief prohibiting Defendants from further dissemination of the Retraction is impermissible under Pennsylvania law.

Plaintiffs also seek an injunction enjoining the Defendants from publicly displaying the Retraction and further requiring Defendants to otherwise withdraw the Retraction from all publicly available sources. For the same reasons discussed above, this relief is impermissible under Pennsylvania law. Further, the Third Circuit addressed a similar request for relief in *Kramer*, wherein the Third Circuit found "no support for the various retractions and withdrawals forced upon Thompson by the district court." *Kramer*, 947 F. 2d at 682. While the Third Circuit focused its analysis primarily on mandatory retractions, it also found that the mandatory withdrawals imposed by the district court were not a permissible form of injunctive relief in a defamation action. *Id*. Further, as discussed in Footnote 5 above, the United States District Court for the Eastern District of Pennsylvania was faced with a materially similar request for injunctive relief in *Graboff*, and concluded, albeit in dicta, that the plaintiff's request that a defendant remove a defamatory article from the defendant's website was an impermissible request for injunctive relief. *Graboff*, 2013 WL 1875819 at *5. As such, this Court finds that Plaintiffs' attempt to distinguish the relief sought in this case from the relief sought in *Kramer*, *see* Br. in Opp'n 8-9, ECF No. 26, is unavailing. Accordingly, for all of the reasons discussed above, this Court finds that Plaintiffs' request for an injunction requiring Defendants to withdraw the Retraction from all publicly available sources, including Defendants' website, is an impermissible request for injunctive relief under Pennsylvania law.

**IV.    Conclusion**

For the reasons discussed above, this Court will grant Defendants' Partial Motion to Dismiss, and dismiss Count I of Plaintiffs' First Amended Complaint.  Because amendment of Count I would be futile, the Court will dismiss Count I with prejudice.  An appropriate Order of Court follows.


BY THE COURT:


s/*Robert J. Colville*_____
Robert J. Colville
United States District Judge

DATED: August 11, 2020

cc/ecf: All counsel of record